UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                )
VERIZON WASHINGTON, D.C. INC.,                  )
                                                )
                Plaintiff,                      )
                                                )
        v.                                      )        Civil Action No. 07-1460 (PLF)
                                                )
COMMUNICATIONS WORKERS                          )
OF AMERICA, AFL-CIO,                            )
                                                )
                Defendant.                      )
_____         )

OPINION

        This matter is before the Court on the parties' cross motions for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]  Verizon Washington,

D.C. Inc. ("Verizon") seeks partial vacation of an arbitration award rendered under a collective

bargaining agreement between Verizon and the Communications Workers of America, AFL-CIO

("CWA").  CWA asks the Court to reject Verizon's request and to enforce the arbitration award

in its entirety.  Upon consideration of the parties' papers and the entire record in this case, the

Court grants Verizon's motion, denies CWA's motion and partially vacates the arbitration award.

_____

        [1]        The papers submitted in connection with this matter include: Verizon's Motion
for Summary Judgment to Partially Vacate Arbitration Award ("Verizon Mot."){;}
Communications Workers of America's Memorandum in Opposition to Verizon Washington,
D.C. Inc.'s Motion for Summary Judgment ("CWA Opp."); Verizon Washington, D.C.'s Reply
to Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Verizon Reply");
Communications Workers of America's Motion for Summary Judgment ("CWA Mot."); Verizon
Washington, D.C.'s Opposition to Defendant's Cross-Motion for Summary Judgment ("Verizon
Opp."); and Communications Workers of America's Reply to Plaintiff's Opposition to
Defendant's Motion for Summary Judgment ("CWA Reply").

I.  BACKGROUND

Verizon and CWA are parties to a collective bargaining agreement.  See

Complaint ¶ 1 ("Compl.").  This dispute centers on Article 16B of that agreement.  Article 16B,

among other things, sets forth (1) the procedure Verizon must follow when creating or changing

job titles and/or classifications, (2) the circumstances under which disputes between Verizon and

CWA about such matters may be brought before an arbitrator, and (3) certain limits on the

arbitrator's authority to fashion remedies if it is determined that the wage rates proposed by

Verizon for the new or revised positions are inappropriate.[2]

_____

[2]      Article 16B states, in pertinent part:

SECTION 1. Whenever the Company determines it appropriate to
create a new job title or job classification . . . , or to restructure or
redefine an existing one, it shall proceed as follows:

(a)  The Company shall notify the Union in writing of such job title
or classification . . . .

(b)  The Union shall have the right, within thirty (30) days from the
receipt of notice from the Company, to initiate negotiations
concerning the initial wage rates or schedules established by the
Company.

* * *

(e)  If . . . the parties are unable to reach agreement within sixty
(60) days following receipt of notice from the Company, the Union
may . . . demand that the issue of an appropriate schedule of wage
rates be submitted for resolution to a neutral third party. . . .

(f)  . . . . In the event that the neutral third party determines that a
different schedule of rates is appropriate, the new schedule shall be
placed in effect retroactive to the date the change or new job was
implemented, except that in no event shall the retroactive effect
exceed 150 days.

Verizon Mot., Ex. B, CWA-Verizon General Agreement, art. 16B at 24-25 (Aug. 3, 2003).

The undisputed facts are as follows.  Verizon employs a group of employees called voice mail clerks.  Voice mail clerks maintain the internal voice mail system used by Verizon employees "by creating, changing, and deleting voice mailboxes."  Verizon Mot. at 3.  In the late 1990s, the voice mail clerks' manager began assigning them additional duties on an occasional basis.  See id. (additional duties included troubleshooting, investigating system problems and removal of old information).  "For a period of time, because of these additional duties, Verizon paid the [clerks] temporary assignment pay over and above their normal salaries."  Id.  The additional pay – unlike the additional duties – "eventually ceased."  Id.

In CWA's view, Verizon's assignment of additional duties to the voice mail clerks effectively re-classified them to a more skilled position, thereby entitling them to "a new [job] classification and higher wage rate."  Verizon Mot. at 4.  Verizon disagreed.  CWA filed a grievance over this matter on December 9, 2001.  That grievance was submitted to arbitration by CWA on July 28, 2003.

On February 28, 2006, Arbitrator Susan Mackenzie determined that Verizon's assignment of additional duties redefined the voice mail clerk position, and that Verizon had violated Article 16B by failing to give CWA notice and an opportunity to negotiate new wage rates for the voice mail clerks.  See CWA Mot., Ex. 3, Opinion and Award of Arbitrator Susan T. Mackenzie at 12 (Feb. 28, 2006).  Arbitrator Mackenzie therefore ordered Verizon to comply with the notice-and-negotiation requirements of Article 16B – that is, she ordered Verizon to notify CWA of the changes to the voice mail clerk position and to engage in negotiations with CWA with respect to the clerks' job classification and wages.  See id. at 13.

The parties attempted to negotiate these issues but were again unable to reach agreement.  The dispute then was submitted to a second arbitrator pursuant to Article 16B.1(e) of the parties' agreement.  The second arbitrator, Paul Gerhart, was charged with determining the proper classification and pay rate for the voice mail clerks.  On May 30, 2007, Arbitrator Gerhart issued his award, concluding that the additional duties assigned to the voice mail clerks entitled them to a new classification and a pay raise.  See Verizon Mot., Ex. A, Opinion and Award of Arbitrator Paul Gerhart at 53-57 (May 30, 2007) ("Gerhart Decision").  He therefore ordered Verizon to (1) create a new position called "senior voice mail clerk," (2) allow voice mail clerks with two or more years of experience in that position to apply for and immediately be promoted to the newly created senior voice mail clerk position, and (3) pay senior voice mail clerks at a rate of $22.20 per hour (rather than the rate of $21.44 per hour paid to voice mail clerks).  See id. at 5, 56-57.

The substance of this remedy is not in dispute here; what is in dispute is Arbitrator Gerhart's decision to give it retroactive effect to December 9, 2001.  Article 16B authorizes an arbitrator to "determine[] that a different schedule of [wage] rates is appropriate," and to make new wage rates "retroactive to the date the change or new job was implemented." CWA-Verizon General Agreement, art. 16B.1(f) at 25.  It also expressly states, however, that if the arbitrator determines that a different wage rate is appropriate and that the new wage rate should apply retroactively, "in no event shall the retroactive effect [of a new wage rate] exceed 150 days." Id. Nevertheless, under Arbitrator Gerhart's award,

> [a]ny Voice Mail Clerk with two or more years of *actual service* as of December 9, 2001 shall receive a pay adjustment reflecting the difference between what she (or he) actually earned and what she

4

> would have earned had she been properly classified as of that date.
> Any Voice Mail Clerk who achieved two years of *actual service*
> after December 9, 2001 shall receive a pay adjustment from the
> date on which they attained two years of actual service as a Voice
> Mail Clerk.

Gerhart Decision at 57. In other words, despite Article 16B.1(f)'s 150-day limit on the retroactivity of wage increases, Arbitrator Gerhart formulated a remedy that extended the retroactive effect of the wage increase as far back as December 9, 2001 for some individuals – a date "*nearly 2,000 days* before the Award's issuance." Verizon Mot. at 2.

Verizon filed suit on August 13, 2007, asking the Court to vacate Arbitrator Gerhart's award to the extent that it extends the retroactive effect of the wage increase beyond 150 days. According to Verizon, that aspect of Arbitrator Gerhart's award must be vacated because it violates the parties' agreement and exceeds Arbitrator Gerhart's authority. See Compl. ¶ 30. CWA counterclaimed on September 4, 2007, asking the Court to enforce the award in its entirety. CWA maintains that Arbitrator Gerhart's award is entirely lawful and consistent with the parties' agreement. See CWA Mot. at 16. The parties filed cross motions for summary judgment on November 14, 2007.

The issue before the Court is a narrow one: Did Arbitrator Gerhart impermissibly disregard the parties' agreement and hence exceed his authority under that agreement by extending the retroactive effect of his remedy beyond 150 days? The Court concludes that the answer to that question is "yes." The Court therefore must vacate that aspect of the award and remand it for further arbitral proceedings consistent with the parties' agreement and this Opinion.

## II.  STANDARD OF REVIEW

Summary judgment may be granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P.  56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.  When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); Washington Post Co. v. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).  On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence."  Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  See

6

FED. R. CIV. P. 56(e)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving

party is "required to provide evidence that would permit a reasonable jury to find" in its favor.

Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the evidence is "merely

colorable" or "not significantly probative," summary judgment may be granted. Anderson v.

Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007)

("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, 'there is no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986)). To defeat summary judgment, a plaintiff must

produce more than "a scintilla of evidence to support [its] claims." Freedman v. MCI

Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

## III.  DISCUSSION

### A.  Judicial Review of Arbitrators' Decisions

When a court reviews an arbitrator's decision purporting to interpret a collective

bargaining agreement, the scope of its review is "extremely narrow." American Postal Workers

Union v. U.S. Postal Service, 52 F.3d 359, 361 (D.C. Cir. 1995); see also McKesson Drug Co. v.

Int'l Bhd. of Teamsters, Local Union No. 730, 957 F. Supp. 1, 4 (D.D.C. 1997). "[A] federal

court may not overrule an arbitrator's decision simply because the court believes its own

interpretation of the contract would be the better one." W.R. Grace & Co. v. Local Union 759,

Int'l Union of the United Rubber Workers, 461 U.S. 757, 764 (1983); see also Berklee College of

Music v. Berklee Chapter of Mass. Federation of Teachers, Local 4412, 858 F.2d 31, 34 (1st

Cir. 1988), cert. denied, 493 U.S. 810 (1989); S. Pacific Transportation Co. v. United

Transportation Union, 789 F. Supp. 9, 13 (D.D.C. 1992) (stating that judicial review of arbitration awards that interpret collective bargaining agreements is "the narrowest known in the law") (internal quotation marks and citation omitted).  This deferential standard of review is consistent with federal labor law and policy, both of which favor arbitral dispute resolution.  See, e.g., Georgia Pacific Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d 940, 944 (1st Cir. 1989); American Postal Workers Union v. United States Postal Service, 789 F.2d 1, 5, 7 (D.C. Cir. 1986).

Nevertheless, the Supreme Court has made clear that an arbitrator may not ignore the plain language of a collective bargaining agreement, and that an arbitrator's award "is legitimate only so long as it draws its essence from the collective bargaining agreement."  United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960).  An arbitrator "is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice."  Id.; see also United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987) (same); Georgia Pacific Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d at 944 (noting that "the paramount point to be remembered in labor arbitration is that the power and authority of an arbitrator is totally derived from the collective bargaining agreement").  Thus, while an arbitrator has broad authority to interpret the terms of a collective bargaining agreement, "[i]f the language of [a collective bargaining agreement] is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement."  Georgia Pacific Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d at 944.  If he does, then a court may not enforce his award.  See United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. at 597.

### B. The Parties' Arguments

According to Verizon, Article 16B.1(f) clearly and unambiguously prohibits arbitrators from extending the retroactive effect of a wage increase beyond 150 days. See Verizon Mot. at 4. Nevertheless, says Verizon, Arbitrator Gerhart's remedial formula extends the effective date of the wage increase far beyond 150 days, at least for certain individuals. See id. at 13. Verizon therefore regards Arbitrator Gerhart's retroactivity determination as "a textbook example of arbitral abuse of authority" that must be vacated. Id. at 1; see also Verizon Opp. at 4 (arguing that "Arbitrator Gerhart failed to fashion an award that draws its essence from the Agreement because it conflicts with the express and unambiguous terms" of Article 16B.1(f)).

CWA disagrees. According to CWA, Arbitrator Gerhart's decision to extend the retroactive effect of the new wage rate beyond 150 days represents a reasonable interpretation of the parties' agreement. To be clear, CWA does not deny that Article 16B.1(f) appears to limit the retroactivity of wage increases to 150 days. Rather, CWA argues that (1) the parties' agreement is "ambiguous" in the sense that it is unclear whether the retroactivity limitation of Article 16B.1(f) applies in all circumstances, and (2) Arbitrator Gerhart properly exercised his interpretive authority by reading Article 16B.1(f) to permit an arbitrator to extend the retroactive effect of a wage increase beyond 150 days if – as here – Verizon fails to fulfill its notice-and-negotiation obligations under Article 16B. See CWA Mot. at 11-13; see also CWA Reply at 4. Stated differently, CWA contends that Arbitrator Gerhart "correctly determined that the parties did not intend to create a disincentive to follow the [notice-and-negotiation provisions of the] contract, or to allow violations [of those provisions by Verizon] to be irremediable," and that he

appropriately fashioned a remedy to eliminate any such disincentive.  CWA Mot. at 11; see also

id. at 12 ("In the face of Verizon's refusal to comply with its responsibility under Article 16.B to

notify CWA of a new job classification, Arbitrator Gerhart determined that the parties only

intended to limit backpay to 150 days where both parties duly comply with the process they

agreed to in Article 16.B.").

### C. Arbitrator Gerhart's Award Must Be Partially Vacated

The Court agrees with Verizon that Arbitrator Gerhart's award must be vacated

insofar as it extended the effective date of the wage increase beyond 150 days.  To explain why,

it is useful to begin by quoting in full Arbitrator Gerhart's justification for his retroactivity

determination:

> The arbitrator is mindful of the admonition in Article
> 16B.1(f) which asserts that "in no event shall the retroactive effect
> exceed 150 days."  Had the Company not violated the Agreement
> as found by Arbitrator Mackenzie, and had the Company properly
> notified the Union of the changes in the Voice Mail Clerk job in
> response to the Union's December 2001 grievance, and had the
> matter been processed and ultimately referred to a "neutral third
> party" as required by Article 16B.1(e) and (f), a decision by the
> neutral third party would have been rendered on or about May 9,
> 2002 which is 150 days after December 9, 2001.  Thus in the
> absence of the contractual violation by the Company, this neutral
> third party award would have been effective on December 9, 2001,
> fully within the boundaries of retroactivity prescribed by the
> Agreement.  It would shock the sensibilities of any reasonable
> person if the Company were allowed to benefit from its own breech
> [sic] of the Agreement . . . particularly since it violated the very
> Article of the Agreement that it now seeks to use to limit the
> contractually agreed-upon remedy in this matter.

Gerhart Decision at 55-56.  This reasoning leaves no doubt that Arbitrator Gerhart exceeded his

arbitral authority under the parties' agreement.

It is true, as CWA argues, that a court is not to vacate an arbitrator's decision "'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'" CWA Mot. at 7-8 (quoting United Paperworkers Int'l Union v. Misco, 484 U.S. at 38). But as the quotation above demonstrates, Arbitrator Gerhart did not even arguably construe or apply the clear language of the parties' express written agreement in making his retroactivity determination. Rather, he chose to disregard the unambiguous limitation of Article 16B.1(f) – a limitation he characterized as a mere "admonition" – because he concluded that it would be unfair to observe that limitation in this case. Gerhart Decision at 55. Stated simply, he "substituted terms and discipline he felt were reasonable for the terms of the agreement," Grand Rapids Die Casting Corp. v. Local Union No. 159, United Automobile Workers, UAW, 684 F.2d 413, 415-17 (6th Cir. 1982), because the actual terms of the agreement, as applied in this case, "shock[ed] [his] sensibilities." Gerhart Decision at 55. In doing so, he abused his arbitral authority. This conclusion is compelled both by the case law, see, e.g., Georgia Pacific Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d at 944 ("If the language of [a collective bargaining agreement] is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement."), and the parties' agreement. See CWA-Verizon General Agreement, art. 13.1(f) at 19 ("The arbitrator shall have no power to add to, subtract from, modify or disregard any of the provisions of this Agreement.").

CWA offers a host of arguments to the contrary, but none of them is persuasive. To begin with, the basic assumption of CWA's argument – namely, that the parties' agreement is ambiguous on this point and hence open to arbitral interpretation – is unconvincing. See CWA Mot. at 10, 11, 13. Article 16B.1(f) states that "*in no event* shall the retroactive effect [of a wage

11

rate increase] exceed 150 days." Article 16B.1(f) (emphasis added). Contrary to CWA's

arguments, neither this language nor any other language in the parties' agreement suggests that

"the parties only intended to limit backpay to 150 days where both parties duly comply with the

[notice-and-negotiation] process" of Article 16B. CWA Mot. at 12. Rather, the plain language

of the parties' agreement demonstrates that the parties bargained for a very specific limit on the

retroactivity of remedies. Indeed, it is difficult to think of a clearer way in which the parties

could have expressed their agreement. See S.D. Warren Co. v. United Paperworkers' Int'l

Union, AFL-CIO, Local 1069, 846 F.2d 827, 828 (1ˢᵗ Cir. 1988). Arbitrator Gerhart therefore

impermissibly "ignore[d] the plain language of the contract," United Paperworkers Int'l Union v.

Misco, 484 U.S. at 38, and failed to give effect to the parties' clearly stated intentions.

      Furthermore, the justification offered by Arbitrator Gerhart for his retroactivity

determination is devoid of any hint of *interpretation* or *analysis* of the parties' agreement –

including any hint of the creative interpretation of Article 16B.1(f) that CWA ascribes to him.

See CWA Mot. at 12 ("Arbitrator Gerhart determined that the parties only intended to limit

backpay to 150 days where both parties duly comply with the process they agreed to in Article

16.B."). There simply is no evidence that this line of reasoning played a role in Arbitrator

Gerhart's retroactivity determination. To the contrary, all of the evidence suggests that it was

based on "his own brand of industrial justice." United Steelworkers of America v. Enterprise

Wheel & Car Corp., 363 U.S. at 597. That is not a permissible basis for an arbitral award. See

Int'l Union of Operating Engineers, Local 139 v. Findorff & Son, Inc., 393 F.3d 742, 745 (7ᵗʰ

Cir. 2004) (noting that an arbitrator may construe an agreement, but may not supplant that

agreement with rules of his own choosing).[3]

        The Court also rejects CWA's argument that Arbitrator Gerhart's retroactivity determination should be upheld because "interpreting contract language in a manner that rewards one party's intentional violation of a collective bargaining agreement is a nonsensical result that a wise arbitrator must seek to discourage." CWA Mot. at 12. As an initial matter, as just discussed, it is not plausible to characterize Arbitrator Gerhart's retroactivity determination as a product of contract interpretation. And CWA is incorrect to suggest that arbitrators may ignore the plain language of unambiguous agreements merely because it would be unfair or harsh to enforce that language. See, e.g., Hay Adams Hotel LLC v. Hotel & Restaurant Employees, Local 25, Civil Action No. 06-968, 2007 WL 1378490, at *4 (D.D.C. May 9, 2007) (arbitrators may not "ignore[] the explicit terms of the parties' . . . agreement," even though the result "may seem unfair or harsh").

        Finally, the Court disagrees with CWA's argument that Arbitrator Gerhart's retroactivity determination should be enforced on the ground that arbitrators may imply or create remedies to address unforeseen circumstances and "discourage the parties from acting in bad faith." CWA Mot. at 13. In the cases cited by CWA for this proposition, courts approved "implied" remedies – that is, remedies that were not explicitly authorized by the parties'

---

[3]     It is true that Arbitrator Gerhart makes one or two off-hand remarks about the need to interpret the parties' agreement throughout his decision. See Gerhart Decision at 38 (observing that the retroactivity issue would require him "to interpret the language of Article 16B.1(f)"); id. at 55. But these references are perfunctory at best, and "an arbitrator cannot shield himself from judicial correction by merely making noises of contract interpretation." Anheuser-Busch, Inc. v. Int'l Bhd. of Teamsters, Local Union No. 744, 280 F.3d 1133, 1138 (7th Cir. 2002) (internal quotation marks omitted); see also NIPSCO v. United Steelworkers of America, 243 F.3d 345, 347 (7th Cir. 2001) (an arbitrator may not "dress his policy desires up in contract interpretation clothing").

agreements but were consistent with the parties' intent and the policies favoring arbitral dispute resolution.  See, e.g., Synergy Gas Co. v. Sasso, 853 F.2d 59, 64 (2d Cir. 1988); Local 879, Allied Indus. Workers v. Chrysler Marine Corp., 819 F.2d 786, 789-90 (2d Cir. 1987); Litton Unit Handling Systems v. Shopmen's Local Union No. 522, Civil Action No. C-1-74-204, 1975 WL 11988, at *9 (S.D. Ohio Nov. 18, 1975).  Here, by contrast, Arbitrator Gerhart did not fashion a remedy in the face of contractual silence in order to effectuate the parties' intent; rather, he fashioned a remedy that directly contradicted the parties' intent as expressed by the unambiguous terms of the agreement.  See, e.g., Bruno's Inc. v. United Food and Commercial Workers Int'l Union, Local 1657, 858 F.2d 1529, 1531 (11th Cir. 1988) (noting that an arbitrator has broad discretion to fashion remedies, but "[h]e may not impose a remedy which directly contradicts the express language of the collective bargaining agreement").  He thus "overreach[ed] [his] authority," Cole v. Burns Int'l Security Services, 105 F.3d 1465, 1474-75 (D.C. Cir. 1997) (internal quotation marks and citation omitted), and his retroactivity determination must be vacated.

## IV. CONCLUSION

For the reasons stated above, Arbitrator Gerhart's award is vacated to the extent that it extends the retroactive effect of the wage increase in question beyond 150 days.  See Communications Workers v. AT&T Co., 903 F. Supp. 3, 6-7 (D.D.C. 1995) (courts may vacate only the part of an arbitrator's award that exceeds an arbitrator's authority).  As the effect of vacatur in this case is to leave unresolved an important issue in dispute, namely, the retroactive effect of Arbitrator Gerhart's award, the Court will remand the case to an arbitrator of the parties'

14

choosing so that he or she may decide that issue in a manner consistent with the parties'

agreement and this Opinion.  See Grand Rapids Die Casting Corp. v. Local Union No. 159,

United Automobile Workers, UAW, 684 F.2d at 416.  An Order consistent with this Opinion

shall be issued this same day.

        SO ORDERED.


        /s/_____
        PAUL L. FRIEDMAN
        United States District Judge

DATE:   August 5, 2008